UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X
GLOBECAST AMERICA INCORPORATED, :

                      Plaintiff,          :     Civil Action No. CV-08-4695 (FRB) (VVP)

            -against-         :    **ANSWER TO AMENDED COMPLAINT AND COUNTERCLAIMS**

EUROVU S.A. and SPANSKI      :
ENTERPRISES, INC.,

                        :

             Defendants.
---------------------------------------------------------X

      Defendant EuroVu S.A. ("EuroVu"), by its attorneys, Loeb & Loeb LLP, alleges as follows for its Answer to the Amended Complaint of plaintiff GlobeCast America Incorporated, f/k/a GlobeCast North America Incorporated ("GlobeCast"):

      1.      Admits the allegations of paragraph 1.

      2.      Denies the allegations of paragraph 2.

      3.      Denies knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 3.

      4.      Denies the allegations of paragraph 4, except admits that EuroVu is a foreign corporation with its principal place of business at 5, Rue du Pre-Fleuri, 1950 Sion (Valais), Switzerland.

      5.      Denies the allegations of paragraph 5, except admits that EuroVu is in the business of, among other things, distributing certain television and radio programming services.

      6.      Denies the allegations of paragraph 6, except admits that EuroVu's programming services include the Polish language television and radio channels TV Polonia, TVP Info (formerly TVP3), Tele5, Polsat, Polskie Radio 1 and Polskie Radio 3.

7.      Denies knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 7.

8.      Denies knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 8.

9.      Denies the allegations of paragraph 9, except admits that GlobeCast and EuroVu entered into a Domestic Distribution and Revenue Sharing Agreement effective as of May 1, 2002 (the "Agreement"), and refers to that agreement for the full contents thereof.

10.      Denies the allegations of the first sentence of paragraph 10, except admits that EuroVu delivers the Programming Service to a point of presence in New York, NY, and refers to the Agreement for the full contents thereof.  Denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 10.

11.      Denies the allegations of paragraph 11, except admits that GlobeCast must authorize CAMs in order to allow subscribers to descramble the encrypted Programming Service signal, and states that, soon after entering into the Agreement, GlobeCast distributed the Programming Service to subscribers, including, *inter alia*, certain cable service providers that are EuroVu customers, pursuant to the Agreement.

12.      Denies the allegations of paragraph 12.

13.      Denies the allegations of paragraph 13.

14.      Denies the allegations of paragraph 14, except admits EuroVu has taken the position that it does not need to pay any additional compensation to GlobeCast beyond the compensation provided for in the Agreement.

15.      Denies the allegations of paragraph 15.

16.    Denies the allegations of paragraph 16, except admits that GlobeCast previously indicated to EuroVu that it would no longer provide CAMs and other products necessary to descramble the encrypted Programming Service signal to EuroVu's cable customers, unless EuroVu agreed to pay additional compensation to GlobeCast beyond what is provided for in the Agreement, and that EuroVu responded that if GlobeCast improperly interfered with the provision of the Programming Service to EuroVu's cable customers, EuroVu would commence an action against GlobeCast for breach of contract. EuroVu further admits that it has asserted Counterclaims in this action, and refers to such Counterclaims for the full contents thereof.

17.    Denies the allegations of paragraph 17.

18.    Denies the allegations of paragraph 18.

19.    Repeats and realleges is responses above to paragraphs 1 through 18 of the Complaint as if fully set forth herein.

20.    Denies the allegations of paragraph 20.

21.    Denies the allegations of paragraph 21, except admits that EuroVu has informed GlobeCast that, if GlobeCast were to follow through on its threats to cease or interfere with the provision of the Programming Service to EuroVu's cable customers, EuroVu would commence an action against GlobeCast for breach of contract. EuroVu further admits that it has asserted Counterclaims in this action, and refers to such Counterclaims for the full contents thereof.

22.    Denies the allegations of paragraph 22.

23.    States that the allegations of paragraph 23 are conclusions of law to which no response is required.

24.    Denies the allegations of paragraph 24.

25.    Denies the allegations of paragraph 25, except denies knowledge or information sufficient to form a belief as to the truth of the allegations pertaining to GlobeCast's purported "wish[es]" and motivations.

26.    Admits that GlobeCast seeks the judgment described in paragraph 26, but denies that GlobeCast is entitled to such a judgment.

27.    Repeats and realleges is responses above to paragraphs 1 through 26 of the Complaint as if fully set forth herein.

28.    Denies the allegations of paragraph 28, except admits that, pursuant to the Agreement, GlobeCast distributes the Programming Service to subscribers thereof, including, *inter alia*, certain cable service providers that are EuroVu customers, and states that GlobeCast receives compensation for such services pursuant to the Agreement. EuroVu further states that GlobeCast has refused to transmit and furnish the Channels signal, along with the necessary hardware and equipment, to other cable service providers, in violation of its obligations under the Agreement.

29.    Denies the allegations of paragraph 29, except admits that EuroVu has accepted the benefit of GlobeCast's services provided pursuant to the Agreement.

30.    Denies the allegations of paragraph 30, and avers that GlobeCast has been compensated for the services provided pursuant to the Agreement.

31.    Denies the allegations of paragraph 31.

32.    Denies the allegations of paragraph 32.

33.    Repeats and realleges is responses above to paragraphs 1 through 32 of the Complaint as if fully set forth herein.

34.     Denies the allegations of paragraph 34, except admits that, pursuant to the Agreement, GlobeCast distributes the Programming Service to subscribers thereof, including, *inter alia*, certain cable service providers that are EuroVu customers, and states that GlobeCast receives compensation for such services pursuant to the Agreement.  EuroVu further states that GlobeCast has refused to transmit and furnish the Channels signal, along with the necessary hardware and equipment, to other cable service providers, in violation of its obligations under the Agreement.

35.     Denies the allegations of paragraph 35, except admits that EuroVu has accepted the benefit of GlobeCast's services provided pursuant to the Agreement.

36.     Denies the allegations of paragraph 36, and avers that GlobeCast has been compensated for the services provided pursuant to the Agreement.

37.     Denies the allegations of paragraph 37.

38.     Denies the allegations of paragraph 38.

39.     Repeats and realleges is responses above to paragraphs 1 through 38 of the Complaint as if fully set forth herein.

40.     Denies the allegations of paragraph 40, except admit that individual Service Subscribers, as such term is defined in the Agreement, pay a monthly fee to GlobeCast.

41.     Denies the allegations of paragraph 41, and refers to the Agreement for the full contents thereof.

42.     Denies the allegations of paragraph 42.

43.     Denies the allegations of paragraph 43, and refers to the Agreement for the full contents thereof.

44.     Denies the allegations of paragraph 44.

5

45.    Repeats and realleges is responses above to paragraphs 1 through 44 of the Complaint as if fully set forth herein.

46.    Denies the allegations of paragraph 46.

47.    Denies the allegations of paragraph 47.

48.    Repeats and realleges is responses above to paragraphs 1 through 47 of the Complaint as if fully set forth herein.

49.    Admits the allegations of paragraph 49, but refers to the Agreement for the full contents thereof.

50.    Denies the allegations of paragraph 50.

51.    Denies the allegations of paragraph 51, and avers that, by its terms, the Agreement is non-exclusive.

52.    Denies the allegations of paragraph 52.

53.    Denies the allegations of paragraph 53.

54.    Repeats and realleges is responses above to paragraphs 1 through 53 of the Complaint as if fully set forth herein.

55.    Denies the allegations of paragraph 55.

56.    Denies the allegations of paragraph 56.

57.    Repeats and realleges is responses above to paragraphs 1 through 56 of the Complaint as if fully set forth herein.

58.    Denies the allegations of paragraph 58, and refers to the Agreement for the full contents thereof.

59.    Denies the allegations of paragraph 59, and refers to the Agreement for the full contents thereof.

60.    Denies the allegations of paragraph 60.

61.    Repeats and realleges is responses above to paragraphs 1 through 60 of the Complaint as if fully set forth herein.

62.    Denies the allegations of paragraph 62.

63.    Denies the allegations of paragraph 63.


EuroVu states the following affirmative defenses, without assuming the burden of proof on such defenses that would otherwise rest on plaintiff.

### As and for a First Affirmative Defense

The Complaint fails to state a claim upon which relief may be granted.

### As and for a Second Affirmative Defense

GlobeCast's claims are barred because such claims were brought in an improper venue, and are more appropriately brought in a different venue.

### As and for a Third Affirmative Defense

GlobeCast's claims are barred, in whole or in part, by the doctrines of estoppel, laches, waiver, ratification and/or acquiescence.

### As and for a Fourth Affirmative Defense

GlobeCast's claims are barred, in whole or in part, by the doctrines of unclean hands and in pari delicto.

### As and for a Fifth Affirmative Defense

To the extent GlobeCast seeks relief pursuant to theories of *quantum meruit*, unjust enrichment, or any other quasi-contractual basis, such claims are barred to the extent that an express agreement concerning the subject matter of any such claims existed.

### As and for a Sixth Affirmative Defense

GlobeCast's claims are barred, in whole or in part, because GlobeCast did not suffer any damages.

### As and for a Seventh Affirmative Defense

To the extent GlobeCast has been damaged, which EuroVu denies, GlobeCast's claims are barred, in whole or in part, by GlobeCast's failure to mitigate its alleged damages.

### As and for a Eighth Affirmative Defense

GlobeCast's claims are barred, in whole or in part, because they are improperly duplicative.

### As and for a Ninth Affirmative Defense

GlobeCast's claims are barred, in whole or in part, by the applicable statute(s) of limitations.

### RIGHT TO ASSERT ADDITIONAL DEFENSES

EuroVu expressly reserves the right to assert and pursue additional defenses.

### COUNTERCLAIMS

Defendant/Counterclaim-Plaintiff EuroVu S.A. ("EuroVu"), by and through its undersigned attorneys, as and for its counterclaims against Plaintiff/Counterclaim-Defendant GlobeCast America Incorporated, f/k/a GlobeCast North America Incorporated ("GlobeCast"), alleges as follows:

1.    EuroVu brings this action seeking damages resulting from GlobeCast's breaches of the Domestic Distribution and Revenue Sharing Agreement Between EuroVu S.A. and

GlobeCast North America Incorporated effective as of May 1, 2002 (the "Agreement"), which was renewed in April 2007.

2.      Pursuant to the Agreement, EuroVu authorized GlobeCast to transmit EuroVu's satellite signal for certain Polish-language television and radio channels to Service Subscribers, in return for, *inter alia*, GlobeCast agreeing to pay to EuroVu seventy five percent (75%) of all revenues due each month from such Service Subscribers. However, upon information and belief, GlobeCast has underreported revenues throughout the life of the Agreement, and has improperly failed to pay amounts due to EuroVu under the Agreement well in excess of $750,000. With interest as provided for in the Agreement, GlobeCast's wrongful conduct has resulted in damages to EuroVu of well over $1,400,000.

3.      In addition, pursuant to the Agreement, GlobeCast is also required to transmit and furnish EuroVu's satellite signal to cable service providers that are EuroVu customers ("Cable Companies"), including furnishing to such Cable Companies the hardware necessary to enjoy the satellite signal. Consistent with its obligations, GlobeCast furnished the satellite signal, and the necessary hardware, to Cable Companies throughout the first seven (7) years of the life of the Agreement. However, recently GlobeCast has refused to furnish EuroVu's satellite signal to Cable Companies, in contravention of its obligations under the Agreement and the parties seven-year course of conduct. EuroVu has suffered, and continues to suffer, damages resulting from GlobeCast's breach.

### The Parties

4.      EuroVu is a Swiss corporation with its principal place of business in Switzerland.

5.      Upon information and belief, GlobeCast is a Delaware corporation having a place of business in Staten Island, New York.

## Jurisdiction and Venue

6.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C § 1367, because this compulsory counterclaim falls within the Court's supplemental jurisdiction, and pursuant to 28 U.S.C. § 1332 by virtue of complete diversity of citizenship between the parties and because the matter in controversy exceeds, exclusive of interest and costs, the sum of $75,000.

7.      By virtue of having commenced its action in this Court, GlobeCast has waived any objection to venue or personal jurisdiction.

## Factual Background

8.      EuroVu is the exclusive licensee of the satellite signal and North and South American distribution rights for TV Polonia, TVP Info, Tele5, Polskie Radio 1 and 3, all Polish language channels ("the Channels").

9.      Upon information and belief, GlobeCast is engaged in the business of content management and delivery, owns full service teleports, and provides transponder capacity, switch capacity, fiber circuits and satellite uplink and downlink services to enable and/or assist the distribution and transmittal of various programming services.

10.     In or around early 2002, GlobeCast and EuroVu entered into discussions regarding an agreement by which GlobeCast would assist in transmitting EuroVu's Channels signal to EuroVu's customers (including cable customers) in North America.  GlobeCast aggressively pursued an agreement with EuroVu, believing that it would allow GlobeCast to earn significant revenue by signing up numerous Polish-speaking individual subscribers for its direct-to-home ("DTH") satellite transmission of EuroVu's Channels, and that obtaining well-known

international channels such as the Channels would help establish GlobeCast as a viable DTH operator in the United States.

11.     Accordingly, on or around May 1, 2002, GlobeCast and EuroVu entered into the Agreement, which, *inter alia*, provided for GlobeCast's transmittal of the Channels signal, on EuroVu's behalf, to "Service Subscribers," defined in paragraph 1.1 of the Agreement as "any customer in the Territory [North America] which receives one or more [Channels] from the Satellite in an encrypted (scrambled) format."

12.     The Agreement provided, *inter alia*, that GlobeCast would pay to EuroVu <u>seventy five percent (75%)</u> of all revenues due each month from Service Subscribers:

> Subject to the right hereby granted to GlobeCast, all revenues due GlobeCast each month from Service Subscribers subscriptions shall be shared seventy five percent (75%) to Customer and twenty five percent (25%) to GlobeCast.

(Agreement § 3.1.1).  The Agreement further provided that, within fifteen days after the end of each calendar month, GlobeCast would provide to EuroVu a monthly report showing, *inter alia*, the revenue earned from Service Subscribers and the amounts due and payable to EuroVu. (Agreement § 4.1).

13.     The Agreement also required that, in addition to individual subscribers, GlobeCast would transmit and furnish EuroVu's Channels signal, along with any hardware and/or equipment necessary to enjoy the Channel's signal, to EuroVu's Cable Company customers, who would then redistribute the Channels to their individual cable subscribers. Transmittal of the Channels signal to Cable Companies, in addition to individual Service Subscribers, does not impose any additional cost on, or require any additional effort by, GlobeCast, and GlobeCast's agreement to  furnish the channels to EuroVu's Cable Company subscribers was essential to EuroVu's decision to do business with GlobeCast.

## I. GlobeCast Fails to Pay EuroVu the Full Amounts Due Under the Agreement

14.     Subsequently, GlobeCast began furnishing EuroVu's Channels signal to individual Service Subscribers and Cable Companies, and supplying EuroVu with monthly reports purporting to set forth GlobeCast's revenues and the amounts owed to EuroVu. However, upon information and belief, from the Agreement's inception GlobeCast has wrongfully underreported revenues and underpaid EuroVu in a variety of ways, resulting in significant damage to EuroVu.

### a. GlobeCast Takes Improper Deductions From the Revenues That it Reports to EuroVu

15.     First, upon information and belief, GlobeCast has unilaterally and surreptitiously taken inappropriate deductions from the revenues that it reports to EuroVu. Section 3.1.1 of the Agreement plainly provides that EuroVu is to receive 75% of "all revenues due GlobeCast each month." The Agreement does not provide for or permit any deductions from the "revenues due." Nevertheless, GlobeCast has not reported to EuroVu the full amounts due, but instead has taken a variety of unauthorized and inappropriate deductions, reporting only its lower, post-deduction "revenues" to EuroVu.

16.     Upon information and belief, the inappropriate deductions taken by GlobeCast have included deductions for credits that GlobeCast unilaterally granted to Service Subscribers due to technical service problems caused by GlobeCast, as well as accounts receivable adjustments and write-offs resulting from GlobeCast's failure to collect amounts due from certain Service Subscribers. GlobeCast has no right under the Agreement to deduct any such credits and/or write-offs from the revenues reported, or amounts owed, to EuroVu.

17.     Because GlobeCast is obligated to pay EuroVu 75% of all revenues due, underreporting its revenues has allowed GlobeCast to pay EuroVu less than the full amount due

under the Agreement. The full extent of these underpayments will be proven at trial, but upon information and belief GlobeCast's improper and surreptitious reductions have resulted in underpayments to EuroVu of at least $250,000.

### b. GlobeCast Has Failed to Report Actual, Pre-November 2005 Revenue of Over $340,000, or to Pay the to EuroVu its 75% Share of Such Revenue

18.    Upon information and belief, GlobeCast has also failed to report to EuroVu actual revenue of $341,224.42, which accrued prior to October 31, 2005 but was never included in GlobeCast's monthly reports, and has failed to pay to EuroVu its 75% share of such revenues.

19.    Prior to October 31, 2005, GlobeCast reported revenue on a cash basis. In other words, GlobeCast only reported revenue to EuroVu once it was actually paid to GlobeCast by Service Subscribers, and GlobeCast did not include open accounts receivable in its monthly reports. However, beginning in November 2005, GlobeCast began reporting its revenues on an accrual basis, *i.e.,* reporting revenue to EuroVu as it came due, rather than when it was actually received.

20.    Because GlobeCast only reported revenue on a cash basis prior to October 31, 2005, it did not report to EuroVu $341,224.42 in open accounts receivable that had accrued, but was not paid, prior to that date. However, after GlobeCast switched to the accrual reporting method in November 2005, it failed to include the outstanding $341,224.42 in its monthly reports.

21.    As a result of GlobeCast's failure to include $341,224.42 in actual revenues in its monthly reports, EuroVu has been deprived of its 75% share of such revenue, totaling $255,918.

c. **GlobeCast Improperly Sells Equipment to EuroVu's Customers, Failing to Report to EuroVu the Revenue Earned From Such Sales or to Pay EuroVu a Portion of Such Revenues**

22.    Upon information and belief, GlobeCast has failed to report to EuroVu significant revenue that it earned as a result of its improper sales of certain hardware and equipment, including satellite receivers, antenna and smart cards, to Service Subscribers.

23.    Pursuant to section 3.1.7 of the Agreement, GlobeCast was required to provide Service Subscribers, at no charge, with the necessary hardware and equipment to receive EuroVu's Channels signal.  To cover GlobeCast's costs, the Agreement provided that, for the first six months of the Agreement, GlobeCast would be entitled to retain the first $249.00 received from each Service Subscriber (which was approximately equal to the cost of the equipment), without having to turn over 75% of such revenues to EuroVu.  After the first six months of the Agreement, GlobeCast was entitled to retain either the first $200 received from each Service Subscriber or the cost of the equipment provided to each Service Subscriber, whichever was less.

24.    However, in or around early 2004, EuroVu learned that GlobeCast had been selling equipment to Service Subscribers at a profit, in violation of the terms of the Agreement. GlobeCast kept the revenues earned from such equipment sales for itself, and did not report such revenues to EuroVu.

25.    After EuroVu confronted GlobeCast concerning its improper and unreported revenue from equipment sales, in or around November, 2004 GlobeCast agreed to pay $75,320.00 to EuroVu, in full settlement of all amounts due to EuroVu as a result of GlobeCast's equipment sales between September 1, 2003, through August 31, 2004 (the "Settlement Period").

26.    Upon information and belief, GlobeCast also improperly sold equipment to Service Subscribers for a profit prior to the Settlement Period, and has continued to do so

following the Settlement Period.  EuroVu is entitled to damages resulting from GlobeCast's equipment sales in violation of the Agreement, including but not limited to 75% of the revenue earned by GlobeCast in connection with these improper sales, the amount of which will be determined at trial.

### d.  GlobeCast Improperly Deducts Excessive "SMS" Costs From the Amounts Paid to EuroVu

27.     Fourth, upon information and belief, GlobeCast has charged EuroVu excessive fees for purported Subscription Management Services ("SMS") costs, in violation of the terms of the Agreement, improperly deducting these excessive fees from the amounts paid to EuroVu.

28.     Pursuant to section 3.1.3 of the Agreement, EuroVu agreed that it would bear 75% of GlobeCast's actual and direct SMS costs (*i.e.*, the cost of certain computer database software for the management of subscriber information).  Throughout the life of the Agreement, GlobeCast has deducted purported SMS costs of $2.00 per Service Subscriber from the amounts paid to EuroVu.

29.     However, upon information and belief, GlobeCast's actual SMS costs are, at most, $1.50 per Service Subscriber.  Accordingly, by falsely claiming excessive SMS costs, EuroVu has improperly withheld at least $237,142 that should have been paid to EuroVu under the terms of the Agreement.

### e.  GlobeCast Understates Revenue For January 2009

30.     Upon information and belief, because of an irregularity in GlobeCast's monthly billing cycle, the revenue reported to EuroVu for January, 2009 was based on an estimate by GlobeCast, and not based on its actual revenues.  In fact, the actual revenues for January, 2009 exceeded GlobeCast's estimate, and, as a result, GlobeCast underpaid EuroVu at least $3,311 in

that month alone.  However, GlobeCast failed to either correct its report to EuroVu or pay to EuroVu the additional amounts due.

### f.  Audit Fee and Interest Charges

31.    Beginning in April, 2009, EuroVu began an audit of GlobeCast's books and records, pursuant to its rights under § 4 of the Agreement (the "Audit").  Pursuant to § 4.3 of the Agreement, GlobeCast is obligated to pay the cost of the Audit, which revealed the various underpayments described above.

32.    Pursuant to paragraph 3.2 of the Agreement, GlobeCast agreed to pay interest in the amount of two percent (2% per month) on any late payments to EuroVu.  Accordingly, as a result of its repeated underpayments, GlobeCast owes a significant amount of interest on the outstanding amounts due and owing to EuroVu.

33.    Indeed, interest charges on underpayments resulting from (i) GlobeCast's improper deductions as described in paragraphs 13-15, *supra*, (ii) GlobeCast's failure to report pre-October 31, 2005 revenues of over $340,000, and (iii) GlobeCast's excessive SMS charges together come to over $590,000.  These interest charges will increase significantly when improper profits from equipment sales are added to the equation.

### II.  GlobeCast Refuses to Furnish the Channels Signal to Cable Companies

34.    Pursuant to its obligations under the Agreement, GlobeCast furnished the Channels signal, and the necessary hardware, to Cable Companies throughout the first seven (7) years of the life of the Agreement.  However, over the course of the last year, GlobeCast has repeatedly sought to unilaterally "renegotiate" the Agreement, attempting in a variety of ways to compel EuroVu to pay additional compensation beyond what is provided for in the Agreement.

35.    For example, during the course of the past year GlobeCast has threatened to cease furnishing EuroVu's Channels signal to Cable Companies, in violation of GlobeCast's contractual obligations, unless EuroVu agreed to pay additional compensation beyond what GlobeCast is contractually entitled to.  When these and other actions failed to induce EuroVu to pay more than required under the Agreement, GlobeCast filed its pending action, misstating the history and terms of the parties' agreement in a further attempt to escape its contractual obligations and to reap additional compensation beyond what the parties bargained for.

36.    Since filing its pending action, GlobeCast has refused to transmit and furnish the Channels signal, along with the necessary hardware and equipment, to certain Cable Companies, in violation of its obligations under the Agreement.  As a result of GlobeCast's breach, EuroVu has suffered, and continues to suffer, damages, including but not limited to the additional expense incurred by EuroVu in furnishing its satellite signal to its Cable Company customers.

### FIRST CAUSE OF ACTION
(Breach of Contract)

37.    EuroVu repeats and realleges the allegations made in paragraphs 1 through 36 of its Counterclaim as if set forth fully herein.

38.    GlobeCast has breached the Agreement by failing to pay to EuroVu the full amounts due thereunder, and by overcharging EuroVu for GlobeCast's SMS costs, and by improperly charging EuroVu's customers for the cost of certain equipment.

39.    As a result of the aforementioned breaches, EuroVu has been damaged in an amount to be proven at trial, but in no event less than $1,400,000.

40.    In addition, GlobeCast has also breached the Agreement by failing and refusing to transmit and furnish EuroVu's Channels signal to Cable Companies.  EuroVu has been damaged,

and continues to be damaged, as a result of such breaches, in a further amount to be proven at trial.

## SECOND CAUSE OF ACTION
### (Unjust Enrichment)

41.     EuroVu repeats and realleges the allegations made in paragraphs 1 through 40 of its Counterclaim as if set forth fully herein.

42.     As heretofore set forth, GlobeCast has both underpaid and overcharged EuroVu throughout the parties' relationship.

43.     As a result of GlobeCast's conduct, GlobeCast has been unjustly enriched, at the expense of EuroVu, in the amount of at least $750,000, not including interest, which equity and good conscience demand that GlobeCast be ordered to repay to EuroVu.

## PRAYER FOR RELIEF

Wherefore, Defendant/Counterclaim Plaintiff EuroVu prays for relief in the following particulars:

   i.   Damages in an amount to be proved at trial, but in no event less than $1,400,000;

   ii.  The costs, disbursements, and reasonable attorneys' fees and expenses incurred in connection with this action; and

   iii. Such other relief as the Court deems just and proper.

Dated: New York, New York
September 11, 2009

LOEB & LOEB LLP

By: _____

Jonathan Zavin (JZ1846)
Jonathan Neil Strauss (JS1090)
345 Park Avenue
New York, New York 10154-1895
(212) 407-4000

*Attorneys for Defendant/Counterclaim Plaintiff*
*EuroVu S.A.*