

**JONATHAN NEIL STRAUSS**
Loeb & Loeb LLP

345 Park Avenue
New York, NY 10154-1895

**Direct**  212.407.4089
**Main**   212.407.4000
**Fax**    212.407.4990
jstrauss@loeb.com

Via electronic filing

June 21, 2011

Hon. Viktor V. Pohorelsky
United States District Court
Eastern District of New York
225 Cadman Plaza
Brooklyn, NY 11201

Re:    GlobeCast North America, Inc. v. EuroVu, S.A., 08-CV-4695 (FRB) (VVP)

Dear Judge Pohorelsky:

We represent defendant EuroVu, S.A. ("EuroVu") in the above-referenced action. Pursuant to Rule I(B) of this Court's individual rules, EuroVu respectfully submits this letter motion seeking to compel plaintiff GlobeCast North America, Inc. ("GlobeCast") to produce a deposition witness to testify concerning the various agreements between GlobeCast and third-party broadcasters recently produced by GlobeCast on April 25 and June 9, 2011 (the "Agreements").[1] GlobeCast has refused to consent to such a deposition.

As the Court may recall, one of the main issues in this case is whether, pursuant to the contract between the parties, EuroVu's cable customers are entitled to receive and distribute the satellite signal for EuroVu's channels. For years, GlobeCast participated in the distribution of this satellite signal to both direct-to-home ("DTH") customers and cable companies. However, in October, 2008 GlobeCast commenced this action claiming, *inter alia*, that it was not required to provide EuroVu's cable customers with the equipment necessary to access the satellite signal, and seeking monetary damages for providing such service in the past. GlobeCast's primary argument has been that because the distribution agreement between the parties does not specifically discuss cable companies, GlobeCast is entitled to prevent EuroVu's cable customers from obtaining the necessary equipment to access the channels, and to retroactively seek fees for the past provision of such services. EuroVu maintains that the right of its cable customers to access and distribute the channels is implicit in numerous provisions of the agreement, and that GlobeCast's six-year course of conduct supports this interpretation.

To shed light on these issues, from the outset of this litigation EuroVu has sought discovery concerning GlobeCast's agreements with other broadcasters who received both DTH and cable

---

[1] We anticipate that the vast majority, if not all, of the requested deposition will focus on the Agreements produced by GlobeCast on June 9, 2011. However, because there is significant overlap in the identities of the parties to the various agreements produced on April 25 and June 9, some questioning concerning the earlier production – which consists of agreements of a different form and which are dated later than those in the June 9 production – may be necessary in order to understand the context in which the subsequent agreements were entered into.

Los Angeles   New York   Chicago   Nashville   www.loeb.com

A limited liability partnership including professional corporations



distribution, believing that such agreements will support EuroVu's argument that, prior to a change in management and business model, GlobeCast interpreted agreements similar to its contract with EuroVu as requiring cable distribution.  GlobeCast refused to voluntarily produce such third-party agreements, and thus the recently-produced Agreements have been the subject of numerous discovery motions dating back to March 15, 2010.  On a number of occasions the Court has ruled in EuroVu's favor and ordered that requested agreements be produced; however, on each such occasion GlobeCast interpreted the Court's order in an exceedingly narrow fashion, and failed to produce the agreements that EuroVu sought.  Finally, on May 6, 2011, the Court unequivocally ordered that GlobeCast produce "[a]ll distribution agreements between the plaintiff and any other entity for whom the plaintiff provided both cable distribution and direct to home distribution at any time during the period from 2001 through 2005." (*See* Exhibit A hereto).  Subsequently, on June 9, 2011, GlobeCast produced eighteen separate agreements (together with a number of amendments and modifications thereto) between GlobeCast and various broadcasters who apparently received both cable and DTH distribution.  While the majority of these Agreements do not specifically reference cable distribution, several of them do.[2]

After reviewing the Agreements, EuroVu believes that a limited deposition is necessary in order to understand the nature of the services provided by GlobeCast thereunder, including the circumstances of and reasons for GlobeCast's provision of cable distribution for the various broadcasters, and the nature of the compensation received by GlobeCast.  None of this information is apparent from the face of the Agreements themselves.  Indeed, the majority of the Agreements do not specifically discuss cable distribution, yet the fact of their production indicates that some form of cable distribution was provided, rendering the Agreements fundamentally similar to the contract between GlobeCast and EuroVu at the heart of this case.  EuroVu is entitled to explore whether GlobeCast employees interpreted such similar Agreements as requiring cable distribution.  In addition, because GlobeCast now claims that it is entitled to recover monetary damages from EuroVu, under both contract and *quantum meruit* theories, for assisting in cable distribution in the past, EuroVu is entitled to learn whether GlobeCast sought or received similar compensation from the other broadcasters for whom GlobeCast provided purportedly "extracontractual" cable services.

EuroVu is prepared to take the deposition in the very near future, and believes that the deposition can be completed in approximately half a day.  Accordingly, GlobeCast cannot complain that the deposition would impose undue burden or delay.  In addition, because EuroVu is not seeking additional documentary evidence but rather seeks to conduct the deposition based on the Agreements themselves, GlobeCast cannot complain that EuroVu is unnecessarily expanding the scope of discovery.

Nor should GlobeCast be heard to oppose the deposition on the grounds that the discovery deadline has already expired, as it was GlobeCast's own failure to provide the requested information before the end of discovery that prevented EuroVu from exploring these issues earlier.  GlobeCast has attempted to excuse its failure to previously produce the Agreements by claiming that, because the Agreements did not explicitly reference "cable" distribution, they were outside the

---

[2] These agreements were produced for "attorneys' eyes only" pursuant to the Court's May 5, 2011 order, and accordingly are not being submitted as exhibits hereto.  However, if the Court wishes to review these agreements, we will certainly provide courtesy copies.



scope of the Court's prior orders. Even if this dubious interpretation of the Court's prior orders were accepted, as explained *supra*, several of the newly-produced Agreements <u>do</u> specifically address cable distribution, and there is no excuse for GlobeCast's failure to produce such documents long ago.[3] In addition, during depositions GlobeCast's witnesses were asked to identify any broadcasters other than EuroVu that received both DTH and cable distribution, yet failed to identify the vast majority of the approximately eighteen broadcasters who apparently received such services. GlobeCast simply should not be awarded for withholding such information, whether its conduct was intentional or innocent, by being permitted to avoid deposition testimony on these subjects, when EuroVu would have certainly questioned GlobeCast about the Agreements during the initial round of depositions had they been timely produced.

For the foregoing reasons, EuroVu respectfully requests that GlobeCast be compelled to make a witness (or witnesses) available for a deposition (or depositions) not to exceed four hours on-the-record time. Pursuant to Federal Rule of Civil Procedure 30(b)(6), such witness or witnesses should be prepared to testify as to all information known or reasonably available to the organization concerning the Agreements and the performance thereof, including but not limited to the extent to which the programming signals of any parties to the Agreements were made available via cable and/or DTH distribution, and the compensation received by GlobeCast in exchange for its services (including any extracontractual compensation sought or received in connection with cable distribution).

We thank the Court for its consideration of this matter.

Respectfully yours,

Jonathan Neil Strauss (JS 1090)

cc:     Thomas S. Baylis, Esq.
        Justin F. Capuano, Esq.
        (Attorneys for GlobeCast)

---

[3] During the May 5, 2010 oral argument on the initial motion to compel, a transcript of which is annexed as Exhibit B hereto, GlobeCast's counsel incorrectly asserted that no agreements existed that covered both DTH and cable distribution:

> I think the answer is then there aren't any. If you're looking for agreements where it's direct-to-home services that also discuss cable service providers and there aren't any.

(Ex. F at 32-33). It was based on this incorrect representation that GlobeCast failed to produce any of the Agreements requested by EuroVu in the first instance.